PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FREDERICK H. HALL, | ) | CASE NO. 1:09 CV 2514 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE GAUGHAN |
|  | ) |  |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Frederick H. Hall seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Social Security Administration ("Agency") denying him Disability Insurance Benefits and Supplemental Security Income (collectively "benefits").

For the reasons provided below, the undersigned recommends affirming the Agency's decision denying benefits to Hall.

## I.  Procedural History

Hall filed applications for benefits, alleging disability since August 15, 2006. (Tr. 99-112). After his applications were denied initially and upon reconsideration, Hall requested a hearing before an Administrative Law Judge ("ALJ") which was held on March 18, 2009. (Tr. 18-55). On April 14, 2009, the ALJ found that Hall was not under a disability from August 15, 2006 through the date of the decision. (Tr. 5-17). On August 27, 2009, the Appeals Council denied Hall's request for review, making the decision of the ALJ the final Agency decision. (Tr.

(1:09 CV 02514)

1-4).  Plaintiff now seeks judicial review of the Agency's decision pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).

## II.  ALJ Findings

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since August 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq*.).

> 2. The claimant has the following severe impairments: depressive disorder, NOS and somatization disorder (20 CFR 404.1521 *et seq*.).

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526, 416.925 and 416.926).

> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, sit 8 hours, and stand and walk 6 hours in an eight-hour day.  The claimant retains the capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) provided he can alternate his position between sitting and standing at will.  The claimant has a need to avoid more than occasional stooping and all crawling and climbing, but retains the capacity to perform low stress simple repetitive tasks not requiring production quotas or frequent interaction with the general public.

> 5. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

> 6. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2006, through the date of this decision (20 CFR 404.1520(g)).

## III.  Standard for Establishing Disability

To establish disability under the Act, a claimant must show that he is unable to

engage in substantial gainful activity due to the existence of "a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or

can be expected to last for a continuous period of not less than twelve months."  *See* 42

(1:09 CV 02514)

U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if he does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration requirement.  At Step Three, the ALJ determines whether the claimant's impairment meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if he has an impairment that meets the listing and the duration requirement.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity (also "RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work.

-3-

(1:09 CV 02514)

At the final step, Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant may work.  Even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that he can perform.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the burden of proof at Steps One through Four.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  This means that  claimant bears the ultimate burden of proof regarding the issues of disability and the establishment of a disability onset date.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy.").

-4-

(1:09 CV 02514)

### IV.  Judicial Review of Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health and Human Servs.*, 889F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389 (1971).  Under 42U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.  "Substantial evidence" is "more than a scintilla of evidence, but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524,535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001).   The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

(1:09 CV 02514)

742, 746 (6th Cir. 2006).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (6th Cir. 1986). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id*. The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## V.  Analysis

Hall raises two arguments for consideration on judicial review:

(A) The ALJ erred in failing to find Hall's physical manifestation of somatoform disorder and his anxiety disorder to be severe, at step two and in failing to evaluate Hall's impairments under medical listing 1.02 and/or 12/06, at step three of the sequential evaluation

(B)The ALJ's RFC is not supported by substantial evidence

Each argument contains several sub-issues. The Court addresses all of the issues and the Defendant responses thereto, in turn.

### A.    The ALJ Did Not Err at Steps Two and Three of the Sequential Evaluation Process

In Hall's first allegation of error, Hall contends that the ALJ erred in failing to find Hall's physical manifestations of somatoform disorder and his anxiety disorder to be severe at Step Two of the sequential evaluation process. ECF No. 15-1 at 13. He also contends that the ALJ erred at Step Three when he failed to consider these perceived

(1:09 CV 02514)

severe impairments under medical listing 1.02 and/or 12.06 at Step Three of the disability

determination process.  ECF No. 15-1 at 13.

Regarding the alleged physical manifestations of somatoform disorder, Hall notes

that the ALJ specifically excluded his back and leg pain, and his difficulty ambulating

and balancing from the list of severe impairments.  ECF No. 15-1 at 15.  Hall avers that

because the ALJ had categorized Hall's somatoform disorder as a severe impairment in

step two of the sequential evaluation process, the symptoms experienced by Plaintiff,

which are derived from the underlying disorder, should also be classified as severe.  ECF

No. 15-1 at 15.  In support of his contention that his physical ailments are severe and

should have been examined under a separate listing category, Hall highlights that he was

prescribed a walker by one of his physicians and that the need to use the walker fits

"squarely within the purview of 1.02(A)" medical listing.  ECF No. 15-1 at 15.

Additionally, Hall illuminates to the Court, Social Security Regulation (SSR) No. 96-3p,

which states in relevant part that "[a]n individual's symptoms may cause limitations and

restrictions in functioning which, when considered at step 2, may require a finding that

there is a 'severe' impairment (s) and a decision to proceed to the next step of sequential

evaluation."  SSR No. 96-3p, *2, 1996 SSR LEXIS 10; ECF No. 15-1 at 15.

In support of  Hall's allegation that the ALJ failed to identify his anxiety disorder

as severe, Hall contends that the records of the Veterans' Administration contain "anxiety

and anxiety related diagnosis, as well as signs and symptoms of anxiety."  ECF No. 15-1

at 16.  Consequently, Hall avers that the "ALJ's failure to include Hall's established and

(1:09 CV 02514)

well documented anxiety disorder as a severe impairment at Step Two and to consider in combination with Hall's other impairments at Step Three is reversible error." ECF No. 15-1 at 16.

Defendant responds that the ALJ found Plaintiff to have only those severe impairments that were consistent with the diagnosis of Dr. Cassidy, Hall's examining psychologist. ECF No. 17 at 14. Defendant further contends that even if the ALJ erred in not identifying one or more other impairments as severe at step two, this alleged error would be of little consequence because the ALJ nevertheless continued to evaluate the Plaintiff's impairments at the remaining steps in the sequential evaluation, reviewed the entire record evidence, and properly concluded that claimant was not disabled. ECF No. 17 at 14.

### 1. **Any Perceived Error at Step Two is Harmless Error**

The Defendant correctly states the law. When an ALJ considers all of a claimant's impairments, at the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at Step Two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006); *Johnson v. Astrue*, 2008 WL 746686, *2 (E.D. Tenn. 2008) (because the ALJ found plaintiff had severe impairments and moved on to the remaining steps of the sequential analysis, determination of whether any other of the plaintiff's impairments were severe was not necessary). Therefore, even if the ALJ erred in not identifying Hall's physical

(1:09 CV 02514)

ailments or anxiety as severe impairments, this error does not dictate reversal when the

ALJ nevertheless considered these impairments along with Hall's other impairments in

the remaining steps.

The record reflects that at Step Three, the ALJ considered Hall's allegations of

anxiety and the physical manifestations of Hall's somatoform disorder when he

concluded that Hall's impairments did not individually or in combination, meet or equal

any of the Listings. *See* *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589,

592 (6th Cir. 1987); *see also* *Simons v. Barnhart*, 114 Fed. Appx. 727, 734 (6th Cir.

2004) (The ALJ stated that he was obligated to consider all the claimant's symptoms,

found that the claimant had an impairment or combination of impairments that were

severe, and the lack of a separate discussion of each of the claimant's multiple

impairments "does not mean that the [ALJ] did not consider their combined effect.").

The ALJ then went on to address the particular listings that he believed were most

relevant to Hall's severe impairments of depressive disorder and somatoform disorder,

and other non-severe impairments. (Tr. 11-12). He reviewed the medical evidence as to

each of these listings and found that the medical evidence did not support findings that

Hall's impairments, either individually or in combination, met those listings. (Tr. 11-12).

Thus, he rightfully concluded that Plaintiff was not disabled at Step Three of the

sequential evaluation process. *See* *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (finding

that an adult whose impairments meets or equals the criteria of a Listing is presumed to

be under a disability and is granted benefits without further evaluation).

(1:09 CV 02514)

The record also reveals that the ALJ considered the aforementioned impairments while computing Hall's residual functional capacity.  The ALJ explained that he "accommodated [Hall's] physical deficits with a sit/stand options and the exertional demands of light work."  (Tr. 13).  And with respect to Hall's mental limitations, the ALJ devised a mental RFC that restricted Hall to jobs that involve "low stress simple repetitive tasks not requiring production quotas or frequent interaction with the general public."  (Tr. 13). Although the ALJ specifically recognized that Plaintiff had continued to aver that his physical ailments and anxiety persisted and, in some instances had worsened, the ALJ found these statements not credible to the extent that they were inconsistent with his residual functioning capacity.  (Tr. 14).  The ALJ stated that "[i]n terms of the claimant's alleged disability and numerous complaints, the evidence fails to support a finding that the claimant is limited as alleged."  (Tr. 14).

The ALJ's decision to discount the severity of Hall's anxiety and physical ailments deriving from the somatoform disorder was based on the ground that Plaintiff's allegations of debilitating symptoms were inconsistent with the evidence on the record.  With respect to Hall's alleged anxiety disorder, the ALJ specifically noted that while Hall argued that these symptoms had worsened, he once denied experiencing panic symptoms to a Veterans' Administration non-medical source.  (Tr. 14).  Additionally, the Court is aware that the medical records are replete with Hall's complaints of physical ailments, yet the ALJ was unable to reconcile these complaints with Hall's high exertional activity level.  On more than one occasion, Hall reported engaging in " extensive physically

(1:09 CV 02514)

demanding activities including working on trucks, mowing the yard, and putting gutters

on the house." (Tr. 14-15).

But the ALJ also relied on medical sources in deriving his conclusions.  Dr.

Nancy McCarthy, Dr. Caroline Lewine, and Dr. Thomas Cassady found Hall to have

other impairments, but did not diagnose Hall with an anxiety disorder. (Tr. 388, 393,

409).  Based upon these opinions, ALJ noted that "the medical reviewers at the initial and

reconsideration determinations concluded that the record fails to support a finding that the

claimant has any medically determinable physical impairment that is severe." (Tr. 15).

Accordingly, because the record demonstrates that the ALJ considered Hall's

anxiety problems and physical impairments in the remaining steps of the sequential

evaluation process, any "error" to classify such impairments as severe at Step Two would

qualify as harmless.  *See Maziarz*, 837 F.2d at 244.

> **2.     Hall Has Not Demonstrated that His Perceived Error at Step
> Three Constitutes Reversible Error**

The Court is equally unpersuaded by Hall's contention that the ALJ erred at Step

Three of the sequential evaluation process and that remand is required.  Plaintiff has

presented to the Court a carefully drafted argument as to why his anxiety and physical

ailments should be identified as severe and re-analyzed to determine if his  impairments

in their totality equaled the medical listings of 1.02, the listing for major dysfunction of a

joint, and/or 12.06, the listing for anxiety related disorder.  ECF No. 15-1 at 13-16.  This

argument is potentially dispositive since a finding in favor of Hall at Step Three could

have streamlined the ALJ's resulting evaluation and resulted in Hall being declared

-11-

(1:09 CV 02514)

disabled.

But what the Court finds more interesting are the arguments that Hall has failed to present.  Hall does not state whether the re-categorization of the aforementioned impairments and subsequent evaluation of his impairments under the additional medical listings would have resulted in a finding of disability at Step Three of the sequential process.  Nor has Hall provided evidence to support this contention.

In *Shinseki v. Sanders*, the Supreme Court held that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." 173 L. Ed. 2d 532, 538 (2009).  The Court finds that Hall has failed to meet this burden. While Hall correctly states: "it is the ALJ who has the responsibility for determining medical equivalence" (ECF No. 15-1 at 14), he omits the fact that it is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment at step three.  *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  Because Hall has failed to meet this burden and has failed to properly develop an argument to this issue, the Court finds it waived. *See Fleming v. Comm'r Soc. Sec.*, 2010 U.S. Dist. Lexis 1447, *11-12 (N.D. Ohio) (citing *Anthony v. Astrue*, 2008 WL 508008, *6 (6th Cir. 2008) and holding that plaintiff's argument that the ALJ erred when he failed to analyze his impairment under a certain medical listing is waived partially because plaintiff presented no evidence as to how his impairment met the criteria under the specified medical listing); *see also Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1051 (E.D. Wis. 2005) ("Absent identification of the

-12-

(1:09 CV 02514)

specific Listing and some demonstration that the criteria are met, plaintiff's vague

contention that his impairments in combination equal a Listing fails."); *see also*

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived. It is not sufficient for a party to mention a possible argument in the most

skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted).

### 3. Substantial Evidence Supports the ALJ's Determination at Steps  Two and Three

The Court finds that Hall's argument that the ALJ erred at Steps Two and Three

must also fail because substantial evidence supports the ALJ's determination that Hall's

anxiety symptoms and physical impairments were not severe and Hall's impairments in

combination did not meet or equal the medical listings of 1.02 or 12.06.  As indicated

previously, the ALJ discounted the severity of Hall's anxiety and physical ailments

because his complaints were inconsistent with the evidence on the record.  Specifically,

Hall's allegations were unable to be reconciled with his high exertional level of activities.

Furthermore, although Hall cites to the VA medical records which indicate that Hall had

an anxiety disorder (ECF Nos. 15-1 at 16-17; 21 at 1-2), and that he was prescribed a

walker (ECF No. 15-1 at 15), the record does not indicate that any medical or non-

medical source specifically opined that Hall's impairments met or equaled listings 1.02 or

12.06.  These points alone adequately demonstrate to the Court that the ALJ's findings

were based on substantial evidence, *i.e.*, "relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

(1:09 CV 02514)

234, 241 (6th Cir. 2007); *Richardson v. Perales*, 402 U.S. 389, 401, (1971) (citing *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is well settled that a claimant's impairment must match all the specified medical criteria in order to show the impairment meets a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall *functional* impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531 (emphasis added). The Court finds that Hall's purported reliance on the "overall functional impact" of the combination of his impairments, *i.e.*, the functional consequences of his impairments to satisfy equivalence to medical listings 1.02 or 12.06 fails. *Zebley*, 493 U.S. at 531.

Accordingly, after a review of the record, the undersigned concludes that the ALJ's determinations regarding Hall's anxiety symptoms and physical impairments not being severe and not meeting the listings is securely within the ALJ's "zone of choice within which decisionmakers may go either way without interference from the courts," as these determinations are supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

### B. Substantial Evidence Supports the ALJ's RFC Determination

In Hall's second allegation of error, Hall argues that the ALJ's RFC determination is not supported by substantial evidence in the record. In support of this argument, Hall makes two separate propositions. First, Hall avers that the RFC assigned to him by the

-14-

(1:09 CV 02514)

ALJ is insupportable because it is based on outdated psychological opinions.  ECF No.
15-1 at 16-17.  Secondly, Hall argues that the RFC determination is insupportable
because it does not include all of Hall's limitations.  ECF No. 15-1 at 17-21.  The Court is
equally unpersuaded by both of Hall's propositions.

> **1.    The ALJ's RFC Determination is Not Based on Outdated
> Psychological Opinions & the ALJ's Decision to Give More
> Weight to the Opinions of Medical Sources is Not Error**

In formulating Hall's RFC, the record reveals that the ALJ gave substantial weight
to the opinions and findings of Hall's Medical Sources–Dr. Cassady, Dr. McCarthy, Dr.
Lewin.  (Tr. 15).  Neither party disputes this fact.  ECF Nos. 15-1 at 16; 17 at 11.  But
Hall contends that the ALJ's decision to afford their findings "great weight" was error
because the opinions were outdated.  ECF No. 15-1 at 16-17.

Hall claims the medical sources' opinions are outdated because the "State agency
psychologists' opinions were offered two years prior to the administrative hearing and
without the benefit of review of treatment records from the VA Medical Centers."  ECF
No. 15-1 at 16.  The VA medical records are not only more recent, but also document
Plaintiff as having severe mental impairments, particularly with respect to his anxiety
disorder, which represents a divergence from the medical source's opinions of Dr.
Cassady, Dr. McCarthy, and Dr. Lewin.  Hall implies that the ALJ should have given
more weight to these records, and argues that the ALJ only cited to four pages out of total
of 304 pages of VA medical records, which is presumably indicative of ALJ's failure to
"fully and fairly evaluate Hall's case."  ECF No. 15-1 at 17.

The Court disagrees with Hall's assessment.  The medical opinions of Dr.

-15-

(1:09 CV 02514)

Cassady, Dr. McCarthy, and Dr. Lewin are not outdated and the Court rejects Hall's

argument that the opinions should be discounted on that basis.  The record reveals that the

psychological evaluations from Hall's medical sources span from December of 2006 to

September of 2007, which is approximately a year and a half before the ALJ held the

disability determination hearing in March of 2009.  Contrary to Plaintiff's assertion, this

is not a significant lapse of time nor did the lapse of time render the doctors' evaluations

stale.  *Contrast Hamblin v. Apfel*, 7 F. App'x 449, 451 (6th Cir. 2001) (finding that the

ALJ did not err when he discounted the treating physician's opinion because it was five

years old and claimant himself stated that his condition had improved materially since

then).  Additionally, in determining whether Hall should receive benefits, the ALJ's role

is to examine Hall's complaints of debilitating impairments after August 15, 2006, Hall's

alleged onset date.  Because the medical opinions of Dr. Cassady, Dr. McCarthy, and Dr.

Lewin are probative of claimant's impairments after alleged onset date, those opinions

remain relevant.  That Hall's medical sources' opinions were delivered earlier, rather than

later does not detract from their credibility.  *See Surma v. Comm'r of Soc. Sec.*, 2010 U.S.

Dist. Lexis 76710, *11-12 (N.D. Ohio 2010) (citing *Surma v. Comm'r of Soc. Sec.*, 2010

U.S. Dist. Lexis 76712, *23-24 (N.D. Ohio 2010) (rejecting claimant's argument that the

ALJ relied on an outdated psychologist's opinion because it was still relevant as it was

delivered during the period that the ALJ was assigned to determine the claimant's

disability status).

Moreover, the record does not reflect that the ALJ erred when he gave more

weight to the older opinions from Hall's medical sources–Dr. Cassady, Dr. McCarthy, Dr.

(1:09 CV 02514)

Lewin–than the more recent evaluations contained in the VA Medical Center records.

The record reveals that an overwhelming majority, if not all, of the VA evaluations are

from non-medical sources–Nurse Practitioners and Behavioral Health Specialists.[1]  And

while SSR No. 06-03p requires that the ALJ consider the findings from non-medical

sources, only "'acceptable medical sources' can be considered treating sources... whose

medical opinions may be entitled to controlling weight."  2006 SSR Lexis 5, *4 (Cum.

Ed. 2006).  Thus, in this instance, the ALJ was not required to give controlling weight to

the opinions of the non-medical sources at the VA, and acted appropriately when he gave

them substantially less weight.[2]

    SSR No. 06-3p states in relevant part that the ALJ "generally should explain the

weight given to opinions from these [non-medical] sources, or otherwise ensure that the

discussion of the evidence in the determination or decision allows a claimant or

subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have

an effect on the outcome of the case."  SSR No. 06-3p, 2006 SSR LEXIS 5, *15-16

(Cum. Ed. 2006).  In the instant case, the ALJ satisfied this requirement.  Although the

ALJ did not specifically state the weight he accorded to the non-medical sources'

opinions, the ALJ's discussion of all of the evidence on the record, including the opinions

---

[1] The evaluations contained in the VA Medical Records that the Plaintiff cites to, represents Plaintiff's out patient treatment after September 2007.

[2]  Additionally SSR No. 06-03p recognizes that "acceptable medical sources" are the most qualified health care professionals.  This may be used as a factor to justify giving more weight to the medical sources than non-medical sources. "  2006 SSR Lexis 5, *12 (Cum. Ed. 2006).

-17-

(1:09 CV 02514)

in the Veterans' Administration medical records makes clear to a subsequent reviewer his

reasoning for not fully incorporating the findings contained in the Veterans'

Administration medical records into his RFC determination–lack of consistency.

The ALJ properly gave the opinions contained in the Veterans' Administration

medical records less weight because he found those diagnosis and opinions to be

inconsistent with other evidence on the record.  SSR No. 06-3p provides that the

"opinions from non-medical sources who have seen the claimant in their professional

capacity should be evaluated by using the applicable factors, including. . . how consistent

the opinion is with other evidence." *Cruse v. Comm'r Soc. Sec.*, 502 F.3d 532, 541 (6th

Cir. 2007) (citing SSR No. 06-3p, 2006 SSR LEXIS 5, *11 (Cum. Ed. 2006)).  The ALJ's

decision indicates that he evaluated the aforementioned opinions on that basis.  Hall has

cited to the Veterans' Administration medical records which document his difficulties

with ambulating and debilitating anxiety, but other evidence in the record discounts the

severity of his symptoms.  For instance, Hall's fiancee related that he works on vehicles

in the garage morning and afternoon and uses stairs to go to the basement and puts wood

in the stove.  (Tr. 14).  Additionally, Hall's medical sources diagnosed other impairments,

but did not find Hall had an anxiety disorder.

Even more telling than the inconsistency of the Veterans' Administration medical

records with *other* evidence on the record, the Veterans' Administration medical records

were internally inconsistent.  The ALJ noted that "on examination [at the Veterans'

Administration medical center] in September 2008, the claimant was fully oriented and

denied any panic symptoms." (Tr. 14).  He also stated that when Hall met with a licensed

-18-

(1:09 CV 02514)

social worker in July of 2008 at the Veterans' Administration, the social worker observed

that Hall "continued focusing on his physical problems and lack of function but reported

extensive physically demanding activities" such as "putting gutters on the house without

recognizing the inconsistencies in his own report." (Tr. 15).  Hall's complaints of

debilitating symptoms, were undeniably overshadowed by this conflicting evidence on the

record.  Accordingly, the ALJ's reluctancy to give great weight to non-medical sources'

opinions, when this conflicting evidence was present is justified.

### 2. The ALJ's RFC Determination Properly Considered All of Hall's Limitations and is Supported by Substantial Evidence

In the latter prong of Hall's second allegation, he avers that the ALJ's RFC is not

supported by substantial evidence because it does not include all of Hall's limitations.  In

support of this argument, Hall presents to the Court the following sub-issues[3]:

> (a) The ALJ failed to incorporate Hall's use of a walker and Hall's
> documented anxiety disorder into the RFC determination and hypothetical
> presented to the VE (ECF Nos. 15-1 at 17; 21 at 1-2) ;
>
> (b) The ALJ erred by relying on the VE's testimony because the jobs cited
> by the VE did not accommodate Hall's moderate limitation in
> concentration, persistence and pace and were not agreeable to Hall's
> anxiety impairment (ECF Nos. 15-1 at 20; 21 at 3-7);

---

[3] Hall also states that the Vocational Expert's testimony "was also inconsistent with the DOT in ways which were not reconciled by the VE testimony regarding sit/stand options or the exertional level of an unarmed security guard."  ECF No. 21 at 3.  The Court finds this argument waived as Hall has not developed this argument; he has not provided any basis for his assertion or explained to the Court his reasoning.  *See McPherson*, 125 F.3d at 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted).

-19-

(1:09 CV 02514)

>    (c) The ALJ failed to incorporate Hall's moderate limitation in social functioning into the RFC determination and hypothetical presented to the VE (ECF Nos. 15-1 at 20-21; 21 at 7).

The Court will address each issue individually.

### a. The ALJ's Decision to Reject Hall's Alleged Use of a Walker and to Discount the Severity of Hall's Anxiety Disorder in Formulating Hall's RFC and the Hypothetical Presented to the VE is Supported by Substantial Evidence

Although Hall avers that the ALJ erred when he failed to include Hall's use of a walker and anxiety disorder into his RFC determination and the hypothetical presented to the Vocational Expert (VE), the Court finds these arguments unavailing as the record reflects that the ALJ's decisions were supported by substantial evidence.  The ALJ reasonably rejected Hall's use of the walker in formulating Hall's RFC because this limitation was not deemed credible.  *See Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987) (stating that the ALJ's finding as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints).  As Defendant states, the record reflects "that Plaintiff's own activities suggested that he was able to perform significant exertional activities that could not be done if he were actually restricted to such an extent."  ECF No. 17 at 15.

Additionally, the ALJ's observation that the record lacked corroborating medical evidence to support Hall's reports of falling is substantiated.  (Tr. 14).  The Veterans' Administration medical records that Plaintiff vigorously defends lends greater support to the ALJ's conclusion than Hall's contrary one.  While Hall complained of a mobility deficit and balance problems, medical sources at the Veterans' Administration were

(1:09 CV 02514)

unable to find a physical cause for his symptoms.  (Tr. 492-94, 529-30).  The Veterans'

Administration  records cited by Hall regarding a prescribed walker are also lacking.  The

record does  reflect that  a non-medical source, a physical therapist, prescribed a walker to

Hall.[4]  (Tr. 483-84).  Even more telling, however, is that the medical record of the visit

with the therapist mostly consists of the non-medical source reciting Hall's subjective

complaints.  (Tr. 483-84).  Thus, the ALJ was not required to give this non-medical

source's opinion controlling weight.  Rather, he had full license to discount that opinion

on the basis that it was inconsistent with other evidence on the record[5] and heavily

influenced by Hall's subjective complaints.  *See Young v. Sec'y of Health & Human*

*Servs.*, 925 F.2d 146, 151 (6th Cir.1990) (finding an ALJ's rejection of opinion proper

because the opinion was based on claimant's subjective complaint).

While Hall correctly notes that the ALJ did not explicitly state why he rejected the

use of the assistive device, the ALJ was not required to do so.  ALJs are not required to

give good reasons for rejecting the opinions of non-medical sources.  *See Smith v.*

*Comm'r Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding that the ALJ is not required

to give good  reasons for the weight accorded to nontreating medical sources' opinions).

The ALJ's basis for rejecting the use of the walker for incorporation into Hall's RFC was

---

[4] The record indicates that Plaintiff was prescribed the walker by the physical therapist, but the "progress notes" or record of the meeting was acknowledged by Michael Orinick III, MD. (Tr. 483-84).

[5] The record also reveals that after Hall was prescribed a walker in July of 2008 (Tr. 483-84), he appeared at the VA for one of his medical appointments in January of 2009.  The nurse practitioner noted that Hall's ambulation was independent as he was without a cane or walker for support that day.  (Tr. 426).

(1:09 CV 02514)

made perfectly clear to the Court and the claimant.  *See* SSR No. 06-3p, 2006 SSR

LEXIS 5, * 15-16 (Cum. Ed. 2006) (instructing ALJs that they should ensure that the

discussion of the evidence in the decision allows the claimant or a reviewer to follow the

ALJ's reasoning for discounting non-medical source's opinion when the opinion may

have an effect on the outcome of the case).  Consequently, his decision in this matter

must be respected.  *See* *Silva v. Comm'r Soc. Sec.*, 2010 U.S. Dist. Lexis 77723, *10-18

(C.D. Cal 2010) (holding that the ALJ properly rejected Plaintiff's allegation that he

needed a walker to ambulate even though he had been prescribed the assistive device

because plaintiff's allegation was not credible); *compare* *Penn v. Comm'r Soc. Sec.*, 2010

U.S. Dist. Lexis 12389, *13-14 (S.D. Ohio 2010) (remanding case back to the agency

because the ALJ made no mention of claimant's need for an ambulatory device and his

basis for not incorporating this limitation into the RFC was not clear to the court).

     With respect to Hall's assertion that ALJ failed to include any limitation arising

from Hall's anxiety disorder in formulating the RFC or hypothetical posed to the VE, the

Court finds this argument without merit.  As previously indicated, the record reflects that

when formulating Hall's RFC, the ALJ considered Hall's allegations of anxiety and found

this allegation to be credible to the extent that it was consistent with the resultant RFC.[6]

---

[6]  The ALJ determined Hall's RFC as follows: "After careful consideration of the entire
record, the undersigned finds that the claimant has the residual functional capacity to lift and
carry 10 pounds frequently and 20 pounds occasionally, sit 8 hours, and stand and walk 6 hours
in an eight-hour day.  The claimant retains the capacity to perform a limited range of light work
as defined in 20 CFR 404.1567(b) and 416.967(b) provided he can alternate his position between
sitting and standing at will.  The claimant has a need to avoid more than occasional stooping and
all crawling and climbing, but retains the capacity to perform low stress simple repetitive tasks
not requiring production quotas or frequent interaction with the general public."  (Tr. 13.)

(1:09 CV 02514)

(Tr. 14).  Because the record reflects that the RFC determination and subsequent

hypothetical question was supported by substantial evidence and included all of Hall's

credible impairments, Hall's argument fails.  *See Felisky,* 35 F.3d at 1035.

> **b.  Substantial Evidence Supports the ALJ's Finding that a
> Significant Number of Jobs Accommodated Hall's
> Limitation in Concentration, Persistence, and Pace and
> Hall's Anxiety Impairment**

Hall argues that the ALJ erred when he relied on the vocational expert's testimony

because the jobs cited by the vocational expert did not accommodate Hall's moderate

limitation in concentration, persistence, and pace, nor were the jobs agreeable to Hall's

anxiety disorder.  ECF Nos. 15-1 at 20; 21 at 3-7.  Thus, he avers that the ALJ's finding

that a significant number of jobs accommodated Hall's vocational profile at Step Five of

the sequential evaluation process was not supported by substantial evidence.

Regarding Hall's limitation in concentration, persistence and pace, Hall contends

that the ALJ's finding that he is restricted to "simple repetitive" one to two step tasks[7] to

accommodate Hall's moderate impairment in this area is only consistent with jobs that

have a reasoning level requirement of one, as interpreted by the Department of Labor,

Dictionary of Titles (DOT).  ECF Nos. 15-1 at 20; 21 at 3-5.  Hall argues that the

---

[7]  Although the ALJ did not explicitly instruct the VE that the claimant was limited to
"one to two step tasks," neither party disputes the fact that ALJ's stated instruction that the
claimant was limited to "simple repetitive tasks" encompassed the one to two step tasks
limitation.  ECF Nos. 21 at 5; 17 at 18-20.  Additionally, the ALJ gave great weight to Dr.
McCarthy's opinion.  (Tr. 15).  She opined that Hall is limited to simple one and two steps.  (Tr.
391).

(1:09 CV 02514)

occupations identified by the vocational expert all have a reasoning level requirements of two or three and, consequently, are inconsistent with Hall's capabilities.  ECF Nos. 15-1 at 20; 21 at 3-5.

The Court disagrees.  Although Hall may be correct in stating that the jobs listed by the vocational expert required higher reasoning levels than the DOT, the Sixth Circuit has ruled that "a vocational expert's testimony may override the job descriptions and requirements contained in the DOT." *Matelski v. Comm'r Soc. Sec.*, 1998 U.S. App. Lexis 14722, *18 (6th Cir. 1998).  The Sixth Circuit recognizes that the DOT requirements are  "merely advisory in nature." *Id.*  Thus, pursuant to Sixth Circuit case law, Hall may not use the DOT reasoning level requirements to rebut or impeach the vocational expert's testimony. *Id.*  The record reflects that the VE provided the ALJ with a list of jobs that he found to be consistent with Hall's restriction to "simple repetitive" one to two step tasks.  Because this restriction (devised by the ALJ) accurately reflects Hall's moderate limitation in concentration, persistence and pace, the vocational expert's testimony that was elicited in response to the hypothetical containing this restriction constitutes substantial evidence in support of the ALJ's decision. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (finding that a vocational expert's  testimony may serve as substantial evidence where the testimony is elicited in response to a hypothetical question that accurately reflects a claimant's impairments).  Accordingly, the ALJ's reliance on the VE testimony was not erroneous.[8] *See Matelski*, 1998 U.S. App. Lexis

---

[8] The Court also takes issue with the case law that Hall uses to support his proposition that an RFC restriction to simple one and two step tasks limits a claimant to perform only those

(1:09 CV 02514)

14722 at *17-19 (holding that the ALJ did not err by relying on vocational expert's

testimony that was given in response to the ALJ's hypothetical limiting claimant to one

and two step positions, even though the jobs cited by the VE had DOT reasoning level

requirements of three and four).

Hall also argues that the jobs cited by the VE did not accommodate Hall's anxiety

impairment and the ALJ erred when he relied on the VE's testimony. Although the

hypothetical presented to the VE, limited Hall to "low stress" jobs, he states that the "ALJ

did not make a highly individualized assessment of the activities that heighten Hall's

stress and he did not consider the connection between Hall's stress levels and the

requirements of the cited jobs." ECF No. 21 at 7.

The Court finds that this argument lacks merit as well. A cursory examination of

jobs that typically accommodate persons with anxiety impairments indicate that the jobs

identified by the VE–security guard, mail clerk, and office helper–have all been assigned

to persons who have problems coping with stress. *See* *Middleton v. Comm'r Soc. Sec.,*

*2010 U.S. Dist. Lexis 5678, *7, *9* (finding claimant suffered from severe impairment of

---

jobs with a DOT reasoning level requirement of one. ECF No. 21 at 5. Although the U.S.
District Court of Maine has decided a series of cases supporting this issue, at least one court in
that district has retreated from the previous holdings in these rulings. In *Pepin v. Astrue*, the
court not only recognized that it was in the minority of courts on this issue, but it also stated that
"within the last year, [it] has recognized that DOT definitions created by the Department of
Labor, are not necessarily totally compatible with regulations created by the Social Security
Administration." 2010 U.S. Dist. Lexis 98294, *7-8 (D. Me 2010). Consequently, the court
recommended abandoning its minority position on this matter and held that the plaintiff was "not
entitled to remand on the basis of any conflict between her RFC and the jobs identified by the
vocational expert." *Id.* at *16-17. Thus, to the extent that Hall uses case law from the U.S.
District Court of Maine to instruct the Court how to rule on this matter, the Court is unpersuaded.

(1:09 CV 02514)

anxiety, but was able to perform the occupations of mail clerk and office worker); *see also Lewicki v. Comm'r Soc. Sec.*, 2010 U.S. Dist. Lexis 103449, *5, *3 (finding claimant suffered from severe impairment of anxiety, but was able to perform security guard position).  Thus to the extent Hall argues that the jobs cited by the vocational expert did not accommodate Hall's anxiety impairment, this argument must fails.

Additionally, to the extent that Hall believes that the ALJ erred in posing a hypothetical that did not fully encompass Hall's history of anxiety and panic attacks, his argument is also unpersuasive.  An ALJ is only required to incorporate into the hypothetical limitations which he accepts as credible.  *See Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).  He concluded that limiting Hall to "low stress" jobs adequately addressed Hall's issues with anxiety, and therefore he was not required to make a highly individualized assessment of the activities that heighten Hall's stress.  The ALJ's finding in this matter is supported by substantial evidence and must be affirmed.  *Felisky*, 35 F.3d at 1035.

> **c**.  **The ALJ's RFC Determination and the Hypothetical Presented to the VE Considered Hall's Moderate Limitation in Social Functioning and is Supported by Substantial Evidence and Any Perceived Error to Fully Encompass Hall's Limitation is Harmless Error**

Lastly, Hall argues that the ALJ failed to incorporate Hall's moderate limitation in social functioning into the RFC determination and subsequently, the hypothetical presented to the vocational expert.  He contends that because of this failure the ALJ's finding that a significant number of jobs accommodated Hall's vocational profile at step five of the sequential evaluation process was not supported by substantial evidence.  ECF

(1:09 CV 02514)

No. 21 at 7.

This argument lacks merit. In both the RFC determination and in the hypothetical presented to the vocational expert, the ALJ included a restriction limiting Hall to tasks not requiring "frequent interaction with the general public,"--a determination supported by substantial evidence. (Tr. 13). As previously indicated, the ALJ gave great weight to Dr. McCarthy, who opined that Hall had moderate limitations in interacting appropriately with the general public. (Tr. 309).

And while the Court agrees with Hall's insinuation that this restriction *could* have been more detailed to explicitly cite that Hall should be limited to tasks not requiring frequent interaction with *co-workers* and *supervisors*[9], the Court finds any perceived oversight in this respect harmless.

The Sixth Circuit's instruction on this matter are clear, this Court should not remand a case back to the Agency, when remand would be an idle and useless formality. *See Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 669) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)) (holding "that where 'remand would be an idle and useless formality,'courts are not required to 'convert judicial review of agency action into a ping-pong game'").

In the case at hand, remand would be a useless formality because the positions identified by the vocational expert accommodate persons who require limited interactions with co-workers and supervisors. The oral transcript from the hearing indicates that in

---

[9] Dr. McCarthy also opined that Hall was moderately impaired in his ability to get along with co-workers. (Tr. 390).

(1:09 CV 02514)

response to questioning by Hall's attorney regarding whether the security guard position

involved limited, if *any* social interaction, the VE testified in the affirmative.  He stated

that he has placed individuals over the years in security guard positions because it is a job

that accommodates people "who wanted to be isolated" and "needed to not be around

people because of mental problems."  (Tr. 33).  With respect to the other identified

positions–the office helper and mail clerk–the record reveals that Hall's attorney did not

ask detailed questions regarding whether these positions also involve limited interaction

with anyone. However, a cursory review of jobs identified by vocational experts to

accommodate limitations in social function reveal that all three positions–office helper,

mail clerk, and security guards–have been found to be appropriate positions for persons

with Hall's social function limitation– those who require limited interactions with others.

*See Middelton*, 2010 U.S. Dist. Lexis 5678, *8-9, *11-12 (finding that claimant suffered

from moderate difficulties in maintaining social functioning and therefore was restricted

to work "that requires no more than a limited but satisfactory ability to deal with co-

workers," but the ALJ determined that claimant could perform mail clerk and office

helper positions); *see also Mischka v. Comm'r Soc. Sec.*, 2010 U.S. Dist. Lexis 69729,

*7, *15-16 (finding that claimant suffered from moderate difficulties in maintaining

social functioning and therefore was restricted to work "that did not involve any more

than brief superficial contact with coworkers, no interactions with the general public," but

the ALJ determined that claimant could perform the positions of office helper and

security guard).

Accordingly, because the record reveals that the ALJ's residual functional

(1:09 CV 02514)

capacity determination and hypothetical presented to the vocational expert considered

Hall's moderate limitation in social functioning and was supported by substantial

evidence, and that any perceived error on these issues would constitute harmless error,

the Court concludes that the ALJ's decision should be affirmed.  *See Rabbers*, 582 F.3d at

669 (citing *Wilson*, 378 F.3d at 547).

## VI.  Conclusion and Recommendation

For the reasons provided above, the Court recommends that the ALJ's decision be

affirmed and that the referral to the undersigned be terminated.

December 23, 2010         s/ *Benita Y. Pearson*
Date                                            United States Magistrate Judge

## OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within
the specified time waives the right to appeal the District Court's order.  *See United States
v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985),
*reh'g denied*, 474 U.S. 1111 (1986).

-29-